IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN SCHULTZ-THACKER,   ) | CASE NO. 1:09 CV 1087 |
| ) | |
| Plaintiff,   ) | |
| ) | MAGISTRATE JUDGE |
| v.   ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL   ) | |
| SECURITY,   ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant.   ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Karen Schultz-Thacker, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.[1]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Schultz-Thacker had severe impairments consisting of back and knee pain following injuries from a 1988 plane crash and an affective mood disorder/post traumatic stress disorder ("PTSD").[2] The ALJ made the following finding regarding

---

[1] ECF # 12.

[2] ECF # 16 at 73. Although the administrative record has internal pagination appearing in the lower right hand corner of each page, this opinion will refer to the individual pages of the record by the electronic case filing system page number that appears at the top of each page in the ECF system. This is necessary because the links in the index are inoperable.

Schultz-Thacker's residual functional capacity: "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled work at the light and sedentary exertional levels."[3] The ALJ decided that Schultz-Thacker had no past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Schultz-Thacker could perform.[5] The ALJ, therefore, found Schultz-Thacker not under a disability.[6]

Schultz-Thacker asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Schultz-Thacker argues that the ALJ's conclusion that she has the residual functional capacity for unskilled work is inconsistent with the ALJ's prior finding that she is mentally impaired with PTSD and anxiety.[7] She further asserts that the ALJ's assessment that she has the residual functional capacity for unskilled work was not supported by the medical

---

[3] *Id.* at 75.

[4] *Id.* at 80.

[5] *Id.* at 81.

[6] *Id.* at 82.

[7] ECF # 24 at 8.

evidence, but was an "unreasonable, independent assessment" by the ALJ herself,[8] which purportedly "ignor[ed]" the contrary opinions of the consultative examiners as to residual functional capacity.[9]

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Facts

Schultz-Thacker initially applied for disability insurance benefits in 2006.[10] She claimed both physical and mental impairments as continuing effects of an airplane crash that occurred in 1988, when she was eight years old, and in which her father died.[11] In particular, she claimed physical injuries to her back and leg, as well as mental impairments manifesting as PTSD, depression, and anxiety.[12]

As to physical limitations, Schultz-Thacker testified at the hearing to using prescription medication for pain and PTSD,[13] as well as drinking alcohol when she cannot pay for her prescriptions.[14] The ALJ concluded that the alcohol use was not material to the

---

[8] *Id.*

[9] *Id.* at 9.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 37.

[14] *Id.* at 49.

final decision to deny benefits.[15]  The ALJ further observed that subsequent to the plane crash, Schultz-Thacker married twice, obtained a GED and a nurse's aide certificate, drives a car, and has held numerous part-time or short term jobs[16] while being able to relieve episodic pain through prescription medication.[17]

With respect to any claimed mental impairment, the ALJ noted first that Schultz-Thacker was not receiving ongoing psychological care since the plane crash.[18] Thus, in addition to Schultz-Thacker's own testimony, her case for mental impairment was evaluated on the basis of several consultative examinations and the state agency review of the records.[19]

J. Joseph Konieczny, Ph.D., performed the first consultative examination in March of 2005.[20]  He diagnosed Schultz-Thacker as having a depressive disorder and psycho-social stressors as residuals to the plane crash.[21]  He rated her concentration, attention, ability to understand and follow directions, and her awareness of rules of social conformity as adequate.[22]  He found a mild impairment in her ability to withstand stress and pressure and

---

[15] *Id*. at 77.

[16] *Id*.

[17] *Id*. at 78.

[18] *Id*. at 79.

[19] *Id*.

[20] ECF # 6 at 693-96.

[21] *Id.* at 696.

[22] *Id.*

-4-

her ability to relate to others and the general public.[23] He judged her insight into her current situation and overall judgment as fair.[24]

Aaron R. Becker, Psy.D., performed a second evaluation in July of 2006.[25] Schultz-Thacker's circumstances had changed since the 2005 evaluation. She was no longer taking prescribed pain medications because of a lack of insurance, relying on alcohol and marijuana instead.[26] Although she had a prescription for Xanax, she admitted to taking more than prescribed.[27] She also acknowledged obtaining pain medication from relatives.[28]

At the time of her 2009 evaluation, she had a divorce pending but was engaged to another man.[29] She denied problematic use of drugs or alcohol at that time.[30] By the time of the 2006 evaluation, however, she had felony charges pending against her in Florida and had problems with her then "current boyfriend."[31] She was abusing prescription medications, drugs, and alcohol to cope.[32] In this context, Dr. Becker evaluated Schultz-Thacker as

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 454-61.

[26] *Id.* at 458.

[27] *Id.*

[28] *Id.* at 457, 458.

[29] *Id.* at 694, 695, 696.

[30] *Id.* at 694.

[31] *Id.* at 458.

[32] *Id.* at 459.

markedly limited in attention and concentration, ability to perform within a schedule, and ability to accept instructions and criticism from supervisors.[33] He rated her as extremely limited in the ability to complete a normal workday and to interact appropriately with the general public.[34]

Karen Voyten, Ph.D., performed evaluations based on the records for the state agency.[35] Her first evaluation covered the period from January 1, 2004 to March 31, 2006.[36] Although Dr. Konieczny's report issued in March of 2005, Dr. Voyten makes no mention of it.[37] She concluded that, as of March 31, 2006, Schultz-Thacker had no evidence of a severe impairment.[38]

Dr. Voyten's second evaluation covered the period from May 1, 2006 to August 25, 2006.[39] She makes extensive reference to Dr. Becker's report in this evaluation.[40] For this latter period, Dr. Voyten concluded that Schultz-Thacker had "the capacity to perform

---

[33] *Id.* at 454.

[34] *Id.*

[35] *Id.* at 464-95.

[36] *Id.* at 464.

[37] *Id.* at 448.

[38] *Id.* at 476.

[39] *Id.* at 482.

[40] *Id.* at 480-81.

simple, repetitive tasks in a static environment without time or production pressure with superficial contact with the general public."[41]

On this record, the ALJ concluded first that only limited weight be given to Dr. Voyten's two evaluations because of perceived discrepancies.[42] She then considered the two consultative examinations in light of the entire record, which included Schultz-Thacker's testimony at the hearing.[43]

> [T]he claimant has no more than mild functional limitation in her activities of daily living tasks. She is able to care for her personal hygiene, cooks small meals, performs some household tasks, and grocery shops either alone or with assistance. She drives and occasionally gets and performs part-time jobs. I find that the claimant has only mild [] in maintaining social functioning. Even if I credit her testimony that she prefers to avoid crowds, the record shows that her anxiety increases when she is without medication and is helped with medication. Moreover, she visits with family and friends, attends church and social events, has been married twice, and has repeatedly attempted to get pregnant and start a family. I find that the claimant has moderate difficulties in sustaining concentration, persistence and pace. She has experienced some success in this area, as shown by the fact that, despite complaining of impaired mental function, she has obtained a GED, earned a nurse's aide certificate in 2001, drives a car and enjoys reading. She reports that medication helps her manage her anxiety and other symptoms. However she claims that even with medication, she experiences nightmares and interrupted sleep. I find that these mental limitations, along with her claimed pain, limit the claimant to performing only unskilled work, but do not further reduce her mental capacity to perform work.[44]

---

[41] *Id.* at 481.

[42] ECF # 24 at 79.

[43] *Id.* at 80.

[44] *Id.*

## Analysis

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[45]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[46]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[47]

---

[45] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[46] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[47] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      The ALJ's decision to deny benefits is supported by substantial evidence.**

The core question here is whether the ALJ's residual functional capacity finding in this case is supported by substantial evidence. In particular, Schultz-Thacker takes issue with the ALJ's decision to incorporate no limitations other than to unskilled work to compensate for her mental limitations.

Contrary to Schultz-Thacker's argument, the outcome does not turn on which of the two consultative evaluations more accurately assessed her mental limitations. In 2005, without resort to alcohol, marijuana, non-prescripted prescription drugs and without pending criminal felony charges and relationship difficulties, Schultz-Thacker exhibited the mild impairments and limitations reported by Dr. Konieczny. A year later, her condition deteriorated, and her limitations increased when she fell into substance abuse and encountered legal and relational problems. Dr. Becker's report documents these.

By the time of the hearing before the ALJ in 2007, however, she was again on prescription medications,[48] had stopped smoking marijuana,[49] and had limited her use of alcohol.[50] She made no reference to ongoing legal problems in her testimony. She had

---

[48] ECF # 16 at 37.

[49] *Id.* at 47.

[50] *Id.* at 49.

reconciled with the boyfriend referred to in Dr. Becker's report and then subsequently married, although they separated by the time of the hearing.[51]

Based on the entire record, reasonable minds could conclude that Dr. Konieczny's report accurately represents the baseline for Schultz-Thacker's residual functional capacity. The stressful events in 2006, and the limitations caused thereby as reflected in Dr. Becker's report, were short in duration. I cannot say, viewing Dr. Becker's report in its proper context, that it deprives the ALJ's residual functional capacity finding of substantial evidence.

Having so concluded, I must nevertheless observe that I do not agree with the ALJ's approach to the various opinions of the treating sources in this case. She did not discuss the opinions of Drs. Konieczny and Becker apart from the explanation of why Dr. Voyten's opinions were "discrepant."[52] In fact, given that Dr. Voyten's two opinions relate to two different time periods, and the second report discusses medical evidence developed during the second time period, the so-called discrepancy is illusory. Dr. Voyten, without the benefit of Dr. Konieczny's report, reasonably concluded on the medical records available that Schultz-Thacker's impairments were not severe. In her second report, with Dr. Becker's evaluation, she concluded that Schultz-Thacker had severe impairments causing limitations. Dr. Voyten, of course, did not have the evidence that the factors underlying Schultz-Thacker's condition in 2006 were short in duration. Dr. Voyten's reports, therefore,

---

[51] *Id.* at 35.

[52] *Id.* at 79-80.

do add weight to the ALJ's ultimate finding that Schultz-Thacker had severe mental impairments justifying a limitation to sedentary, unskilled work but not the greater limitations opined by Dr. Becker.

In making this decision, I note, as did the Sixth Circuit in *Buxton*, that there exists a "zone of choice" within which the Commissioner may act without interference from the reviewing court.[53] While the presence of some evidence might prompt a reviewing court to consider whether it would have decided the case differently had it been presented under a *de novo* standard of review, if the court nevertheless concludes that there is substantial evidence to support the Commissioner's decision, it must affirm.

Here, as discussed, the record does contain some evidence that Schultz-Thacker's mild mental impairments did impose limitations on her work-related capabilities beyond those recognized by the ALJ. The record also contains evidence that any such limitations resulted from stresses and abuses that dissipated over a relatively short time period. With reference to the jury trial analogy discussed above, the evidence here is such that the Commissioner would survive directed verdict. The Commissioner, therefore, must be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Schultz-Thacker had no disability. Accordingly, the decision of the Commissioner denying Schultz-Thacker disability insurance benefits and supplemental security income is affirmed.

---

[53] *Buxton*, 246 F.3d at 772.

IT IS SO ORDERED.

Dated:  April 30, 2010                                              s/ William H. Baughman, Jr.
                                                                    United States Magistrate Judge